
FILED
JUN 0 8 2016
Clerk, U S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| LAURA KNIGHT and MARK KNIGHT,<br><br>Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., and HSBC BANK USA, N.A.,<br><br>Defendants. | CV 15–56–M–DLC<br><br>ORDER |

Before the Court is Defendants Wells Fargo Bank, N.A.'s ("Wells Fargo") and HSBC Bank USA, N.A.'s ("HSBC") motion for judgment on the pleadings. For the reasons stated below, the Court grants the motion in part and denies it in part.

## BACKGROUND

For purposes of Defendants' motion for judgment on the pleadings, "all material allegations in [the Amended Complaint] must be taken as true and viewed in the light most favorable to the [Knights]," as the non-moving party. *Goldstein*

*v. City of Long Beach*, 715 F.3d 750. 753 (9th Cir. 2013).

This case presents a familiar set of facts arising in the wake of the financial crisis of 2008 and 2009, and involves allegations of mishandling and illegal practices with regard to servicing, modifying, and attempting to foreclose upon a home loan. On January 26, 2007, Plaintiffs Laura and Mark Knight ("the Knights") executed a deed of trust pursuant to the Montana Small Tract Financing Act ("MSTFA"), Montana Code Annotated § 71–1–301 et seq. The deed of trust named Home123 Corporation ("Home123") as the lender; First American Title Insurance Company ("First American Title") as the trustee; and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary "solely as nominee for [Home123 and its] successors and assigns." (Doc. 1-5 at 1–2.) The deed of trust secured a $603,000 home loan from Home123 to the Knights for the purchase of residential real estate at 1800 Monta Vista Court in Missoula, Montana ("the Missoula property").

In early April 2007, New Century Mortgage Corporation ("New Century"), of which Home123 was a subsidiary, filed for Chapter 11 bankruptcy. New Century and Home123 contracted with MERS to track mortgages and trust indentures which the companies originated. Not long after filing for bankruptcy, New Century and Home123 rejected the contract with MERS on March 19, 2008,

and MERS accepted the rejection effective March 31, 2008. Nevertheless, MERS transferred Home123's beneficial interest in the Knights' deed of trust to HSBC by assignment on April 4, 2008. The Knights allege, in Count I of their Amended Complaint, that this assignment was invalid because MERS no longer had the authority to transfer any interest in their property at the time it purportedly did so.

New Century originally serviced the Knights' loan, but in June 2007, the Knights received notice that American Servicing Company ("ASC"), a subsidiary of Wells Fargo, would service the loan going forward. Then, in November 2007, Mark Knight lost his job and the Knights began to experience financial difficulties. They remained current on their loan through 2007, but in early 2008 the Knights sought a loan modification. They allege ASC advised that a loan modification would only be available to them if they were ninety days or more delinquent in their payments, and that they skipped payments at ASC's direction. The Knights began sending loan modification application materials to ASC in March 2008. Meanwhile, in April 2008, Wells Fargo noticed a trustee's sale of the Missoula property for August 15, 2008, and claimed that HSBC held a beneficial interest in the home. This began a cycle, persisting through to the time the Knights filed this lawsuit, of the Knights contacting Defendants, sending materials and attempting to secure a loan modification, receiving either no word

on or a rejection of their application, and then receiving notification of a pending trustee's sale.

A number of important events occurred while this cycle repeated itself for nearly eight years. First, on April 6, 2009, the Knights filed for bankruptcy under Chapter 7 of the Bankruptcy Code. Due to the Knights' pending loan modification application, Wells Fargo moved for and received a lifting of the bankruptcy stay in order to continue servicing the Knights' loan. The Knights received a discharge from bankruptcy on August 18, 2009. Second, after suspecting for several years that "they had [not] been properly considered for a loan modification" and that ASC and Wells Fargo were not "making a good faith attempt to come up with a sustainable mortgage payment for them" (Doc. 24 at 21), in January 2011 "the Knights began hearing reports about Wells Fargo's legal troubles and allegations of fraudulent practices in respect to foreclosures and borrowers." (*Id.* at 24.) Third, in response to a written complaint filed by the Knights with the Montana Office of Consumer Protection, ASC indicated that the beneficial interest in the Knights' deed of trust was transferred to Ocwen Loan Servicing, LLC on April 4, 2007, approximately one year prior to the assignment challenged in Count I of the Knights' Amended Complaint. Finally, in February 2014, the Knights filed for Chapter 13 bankruptcy in this district. The Knights dismissed their bankruptcy

petition ten months later.

The Knights filed this lawsuit on May 12, 2015. In their original Verified Complaint, the Knights sought, among other things, a preliminary injunction enjoining First American Title from conducting what was the last noticed trustee's sale in this case, scheduled to occur on June 15, 2015. The Knights served the Verified Complaint on each of the defendants between May 13 and May 21, 2015. Wells Fargo filed its Answer on June 3, 2015, and First American Title filed its Answer on June 8, 2015. With the sale of their home imminent, and because neither of the answering defendants addressed the requested injunctive relief, the Court issued a temporary restraining order halting the June 15th sale and set a briefing schedule on the preliminary injunction. Before briefing commenced, the parties stipulated to dissolving the temporary restraining order, with Defendants assuring the Knights and the Court that no further trustee's sale would be scheduled while this case remains pending.

The Court conducted a preliminary pretrial conference in this case on September 24, 2015. Two months later, the parties filed their amended pleadings. The Knights' Amended Complaint contains the following claims for relief: Count I (Declaratory Judgment); Count II(A) (Negligence and Negligent Misrepresentation—Loan Servicing and Foreclosure); Count II(B) (Negligence

and Negligent Misrepresentation—Attempting to Foreclose or Service without Legal Authority); Count III(A) (Montana Consumer Protection Act ("MCPA")[1] —Loan Servicing and Foreclosure); Count III(B) (MCPA—Deceptive and Unfair Practices with Respect to Ownership and Servicing of the Property); Count IV (Constructive Trust); and Count V (Exemplary Damages). Shortly after Defendants filed their Amended Answer, the Knights moved to dismiss First American Title without prejudice, and the Court granted the motion on December 24, 2015. Defendants filed the instant motion for judgment on the pleadings on February 9, 2016. This matter goes to trial before a jury on November 14, 2016.

## LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Courts review motions under Rule 12(c) in the same manner as motions to dismiss under Rule 12(b)(6). *See Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011) (a "pre-answer dismissal for failure to state a claim under Rule 12(b)(6) is functionally identical to a post-answer dismissal under Rule 12(c)") (citations omitted); *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1155 (9th Cir. 2015) ("Analysis under Rule 12(c) is

---

1. Mont. Code Ann. § 30–14–101 et seq.

substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy") (citations omitted). "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, a party is entitled to judgment as a matter of law." *Lyon*, 656 F.3d at 883 (citations omitted).

When a motion to dismiss is based on the running of the statute of limitations, the motion may be granted only "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)). Such a motion may be granted only when "the running of the statute is apparent on the face of the complaint." *Jablon*, 614 F.2d at 682. If the applicability of equitable tolling depends on factual questions not clearly resolved in the pleadings, a motion to dismiss based on the running of the statue must be denied. *Supermail Cargo, Inc.*, 68 F.3d at 1207.

## ANALYSIS

Defendants move for judgment on the pleadings on three grounds. First, Defendants contend that the Knights are judicially estopped from pursuing their

claims because they failed to disclose them in their schedules the first time they filed for bankruptcy, under Chapter 7, in April 2009. Second, Defendants argue that the Knights lack standing to challenge the transfer of the beneficial interest in their deed of trust from beneficiary-nominee MERS to HSBC—the transfer that forms the heart of Count I of the Knights' Amended Complaint. Third, Defendants assert that each of the Knights' claims are time-barred.

## I. Judicial estoppel

Defendants urge the Court to dismiss this case because the Knights failed in 2009 to alert the bankruptcy court to the existence of the claims underlying this lawsuit, which the Knights ultimately filed six years later. Defendants contend that, viewing the Amended Complaint and a limited set of materials beyond the pleadings,[2] it is clear that the Knights were aware of the potential for this litigation as far back as 2008, and therefore were statutorily bound to list the lawsuit as an asset in their bankruptcy schedules. The Knights concede that they did not list the lawsuit as an asset in 2009 and that judicial estoppel may "bar some claims prior to that date if [they] knew about those claims and yet omitted them from their schedules." (Doc. 35 at 10.) However, the Knights argue that the majority of

---

2. While the Court has reviewed these materials, which include a transcript from a proceeding associated with the Knights' 2014 Chapter 13 bankruptcy filing, the Court's ruling on the judicial estoppel issue is made irrespective of those materials.

Defendants' conduct at issue in their claims post-dates their Chapter 7 bankruptcy discharge, making it impossible to disclose the existence of what was then a non-existent lawsuit. The Court agrees with the Knights, and will deny Defendants' motion on this ground.

Judicial estoppel is a discretionary equitable doctrine designed to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733 F.3d 267, 270 (9th Cir. 2013) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749–750 (2001)). Courts deciding whether to apply judicial estoppel typically consider the following: (1) whether "a party's later position [is] 'clearly inconsistent' with its earlier position;" (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* (citing *New Hampshire*, 532 U.S. at 750–751). However, "it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." *Id.* at 271 (citing *New*

*Hampshire*, 532 U.S. at 753).

It is well-established that "[i]n the bankruptcy context, . . . [i]f a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action." *Id.* at 271 (citations omitted). "The reason is that the plaintiff-debtor represented in the bankruptcy case that no claim existed, so he or she is estopped from representing in the lawsuit that a claim *does* exist." *Id.* (emphasis in original). In assessing whether a plaintiff-debtor "mistakenly" or "inadvertently" failed to disclose claims, courts should apply "the ordinary understanding of those terms" to the facts surrounding the omission from the bankruptcy schedules. *Dzakula v. McHugh*, 746 F.3d 399, 401 (9th Cir. 2013).

The timing and circumstances of this case in relation to the Knights' 2009 bankruptcy filing make application of the doctrine of judicial estoppel inappropriate here. While the Knights' Amended Complaint contains factual allegations pre-dating their April 2009 bankruptcy schedules and August 2009 discharge order, the Court cannot conclude as a matter of law that enough had transpired to make a potential lawsuit against Defendants apparent to the Knights in 2009. Indeed, much of the case law regarding judicial estoppel in the bankruptcy context presents a much closer question in a temporal sense. *See e.g.,*

*Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555 (9th Cir. 1992) (plaintiff-debtor concluded that he had been legally wronged *prior* to his bankruptcy case closing, and filed suit nine months after discharge); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001) (plaintiff-debtor filed for bankruptcy several months after hiring lawyers to pursue an insurance claim against the defendant, and included the purported insurance loss on his bankruptcy schedules without including the corresponding claim as an asset). It is undisputed that the Knights encountered trouble making their monthly home loan payments and made contact with Defendants to that end prior to filing for bankruptcy. However, viewing the allegations in the Amended Complaint in their totality and taking them as true, the Knights did not recognize that their experiences rose to the level of a cause of action until sometime in 2011, nearly two years after the bankruptcy court closed their case. At the time they completed their bankruptcy schedules, the Knights had nothing concrete to disclose. Moreover, to the extent there even was an omission, it was certainly inadvertent and mistaken simply because it was unknown. Judicial estoppel therefore does not bar the present action.

## II. Standing

Next, Defendants contend that the Knights lack standing with respect to

Count I of the Amended Complaint, the declaratory claim wherein the Knights challenge whether Wells Fargo and HSBC hold a beneficial interest in the Missoula property.³ Defendants argue that the Knights were strangers to the contract assigning the beneficial interest in the Knights' deed of trust from MERS to HSBC, and therefore cannot seek declaratory relief invalidating the assignment. Of course, the Knights can proceed with Count I if they can demonstrate "a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Consumer Fin. Prot. Bureau v. Gordon*, __ F.3d __, 2016 WL 1459205 at *3 (9th Cir. Apr. 14, 2016) (citing *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013)). At this stage of the litigation—and in light of the fact that the Knights were the original grantors of the beneficial interest created under the MSTFA and purportedly assigned from MERS to HSBC—the Court concludes that the Knights have standing to proceed with Count I of their Amended Complaint. Indeed, the Montana Supreme Court has at least tacitly concluded the same with regard to other plaintiffs in the Knights' position. *See Pilgeram v. Greenpoint Mortg.*

---

3. To the extent Defendants challenge Count I of the Knights' Amended Complaint on the merits with the instant motion—which it appears they do, based upon many of the out-of-district case citations in Section II of their brief—the Court will deny the motion and take up merits-based arguments regarding Count I at summary judgment.

*Funding, Inc.*, 313 P.3d 839 (Mont. 2013) (finding that MERS was not a "beneficiary" under the STFA, and thus could not assign a beneficial interest in the plaintiff-appellant's deed of trust). Again, the validity of the assignment is a merits question best left for another day.

## III. Statutes of limitations

Finally, Defendants urge the Court to grant their motion for judgment on the pleadings as to Counts II(A), II(B), III(A), III(B), and IV of the Amended Complaint based on expiration of the applicable statutes of limitations. The Knights do not dispute that the conduct underlying each of these counts dates back to the "beginning of their ordeal" with Defendants, i.e. approximately 2008. (Doc. 35 at 30.) The Knights filed their initial Complaint in this matter in May, 2015, approximately seven years later. Instead, the Knights contend that their claims are "preserved" under either a continuing tort or discovery rule theory. The Court disagrees, and will dismiss these counts with prejudice accordingly.

The operative statutes of limitations are not in dispute. The Knights' claims for negligence and negligent misrepresentation are subject to a three-year statute of limitations. Mont. Code Ann. § 27–2–204(1); *Walstad v. Nw. Bank of Great Falls*, 783 P.2d 1325, 1328 (Mont. 1989). Their claims under the MCPA are subject to a two-year statute of limitations. *Osterman v. Sears, Roebuck & Co.*, 80

P.3d 435, 441 (2003). Their constructive fraud claim is subject to a two-year statute of limitations. Mont. Code Ann. § 27–2–203. Accordingly, the Knights' tort claims are subject to, at most, a three-year limitations period. Because they filed this action on May 12, 2015, their claims are subject to dismissal if: (1) they accrued before May 12, 2012, and (2) it is beyond doubt that equitable tolling is inapplicable. Mont. Code Ann. § 27–2–102; *Supermail Cargo, Inc.*, 68 F.3d at 1206–1207.

Under Montana law, the limitations period on a cause of action begins to run "when all elements of the claim or cause exist or have occurred." Mont. Code Ann. § 27–2–102(1)(a). "[T]he fact that a party does not know that he or she has a claim, whether because he or she is unaware of the facts or unaware of his or her legal rights, is usually not sufficient to delay the beginning of the limitations period." *Christian v. Atl. Richfield Co.*, 358 P.3d 131, 152 (Mont. 2015) (citing Mont. Code Ann. § 27–2– 102(2)).

There are, however, two well-known exceptions to this rule. First, Montana recognizes the continuing tort theory. "A continuing tort is one that is not capable of being captured by a definition of time and place of injury because it is an active, progressive[,] continuing occurrence . . . taking place at all times." *Christian*, 358 P.3d at 140 (citations omitted). "The continuing tort exception may be applied to

injuries that are ongoing or in some way recurring," and requires a reviewing court "to consider whether a [tort] is temporary or permanent in character." *Id.* "A permanent [tort] is one where the situation has stabilized and the permanent damage is reasonably certain." *Id.* (citations omitted). With a permanent tort or injury, the limitations period begins to run from the completion of the tort itself, i.e. from the time the situation has stabilized. *Id.* A temporary tort is "terminable" and "abatable," and "its repetition or continuance gives rise to a new cause of action [for which] recovery may be had for damages accruing within the statutory period next preceding the commencement of the action." *Id.* at 141. "[R]easonable abatability defines whether a tort is permanent or temporary." *Christian*, 358 P.3d at 141. While continuing tort theory most often applies to trespass and nuisance claims, it can apply to toll the limitations period of other tort causes of action "if the injury is of a nature that may be considered continuing." *Id.* at 150.

Second, Montana's discovery rule provides that "[t]he period of limitation does not begin on any claim or cause of action for an injury to person or property until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party if: (a) the facts constituting the claim are by their nature concealed or self-concealing; or (b)

before, during, or after the act causing the injury, the defendant has taken action which prevents the injured party from discovering the injury or its cause." § 27–2–102(3). "[T]he nondisclosure of information," as well "[a]n injury that is not apparent to the layperson because of its complexity, and which can ultimately only be discovered by professional analysis," are circumstances which may constitute self-concealing facts and injuries. *Christian*, 358 P.3d at 153. "[W]hether the facts constituting the claim were concealed or self-concealing, whether the defendant acted to prevent discovery of those facts, or whether the plaintiff exercised due diligence" are questions of fact. *Id.* (citing *Johnston v. Centennial Log Homes & Furnishings, Inc.*, 305 P.3d 781, 790 (Mont. 2013)).

Based on the allegations in the Knights' Amended Complaint, the Court finds that their tort claims accrued in 2011. The Knights affirmatively state that after approximately three years of working with ASC and Wells Fargo with respect to restructuring their home loan through HSBC, the Knights became aware of Wells Fargo's "legal troubles and allegations of fraudulent practices in respect to foreclosures and borrowers." (Doc. 24 at 24.) There can be no doubt that, given the course of dealing painstakingly described in the Knights' Amended Complaint, all of the elements of Counts II(A), II(B), III(A), III(B), and IV existed or had occurred as of early 2011. The Court recognizes that the Knights allege

various examples of Defendants' tortious conduct occurring after January 2011. However, the Court discerns no substantive difference between Defendants' actions before and after that date, meaning that no independent claims arose after January 2011 and within the applicable statutes of limitations. The conduct underlying the Knights' tort claims began well before 2011, and continued well past that date in substantially the same manner.

Moreover, neither the discovery rule nor continuing tort theory toll the applicable statutes of limitations. The above representation from the Knights' Amended Complaint confirms that as of January 2011, they had been "given notice or information that would prompt a reasonable person to conduct further inquiry" into their causes of action against Defendants. *Christian*, 358 P.3d at 153 (citing *Mobley v. Hall*, 657 P.2d 604, 607 (1983)). Because they were given such notice, yet failed to file this lawsuit until 2015, the discovery rule does not toll the limitations periods applicable to their claims.

Nor can the Court reasonably adopt the Knights' contention that Defendants' actions were "abatable" and therefore constituted a continuing tort. The Knights claim that, because Defendants ultimately offered them a loan modification in 2013, Defendants could have abated the injury at their discretion by simply modifying the Knights' loan earlier in time. However, Defendants'

purported tortious conduct and the sorts of injuries to property most often at issue in continuing tort cases are readily and critically distinguishable. In all of the trespass and nuisance cases discussed in *Christian*, there is some type of objectively-identifiable, injurious environmental condition. *See* 358 P.3d 140–149. The question of liability in such cases boils down less to what the injury is, and more to its ultimate extent and to who is responsible for causing it. In this case, on the other hand, the question of liability hinges on whether the Knights even suffered a legally-remediable harm in the first place. In those cases where conduct is deemed "abatable," the tortfeasor is generally aware that an injury has occurred. To say that the Knights' injuries and Defendants' actions were "abatable" would presume the tortiousness of Defendants' conduct, and would presume that any defendant could identify when they had knowingly or unknowingly committed a tort. Were the Court to conclude that a tort is continuing because a defendant can always choose to stop acting in the manner which a plaintiff alleges is tortious, the continuing tort *exception* would see a vast expansion and would subvert the purpose of statutes of limitations. The Court therefore concludes that Defendants' actions do not constitute continuing torts, and that the statutes of limitations applicable to the Knights' claims are not tolled on this theory.

## CONCLUSION

Neither judicial estoppel nor standing outright preclude the Knights' claims in this case. However, given what had occurred between the Knights and Defendants between 2007 and 2011, and what the Knights learned about Defendants' alleged tortious conduct at the end of that period, the statutes of limitations began to run on the Knights' tort claims in approximately January 2011. Consequently, those claims are time-barred pursuant to Montana statute. Moreover, because the Knights' tort claims will be dismissed, their exemplary damages claim, Count V, must also be dismissed.

Accordingly, IT IS ORDERED that Defendants' motion for judgment on the pleadings (Doc. 28) is GRANTED IN PART. The motion is GRANTED with respect to Counts II(A), II(B), III(A), III(B), IV, and V, which are hereby DISMISSED WITH PREJUDICE. Defendants' motion is DENIED in all other respects.

DATED this 8th day of June, 2016.

*Dana L. Christensen*
Dana L. Christensen, Chief Judge
United States District Court